Grafton, }
April 7, 1914. {

FRED A. JONES, *Adm'r,* v. BOSTON & MAINE RAILROAD.

Certain evidence deemed sufficient to warrant a finding of freedom from fault on the part of a highway traveler who was killed at a grade crossing.

CASE, for negligently causing the death of the plaintiff's intestate, George J. Poland, at a grade crossing in Lebanon. Trial by jury and verdict for the plaintiff. Transferred from the October term, 1913, of the superior court by *Peaslee,* J., on the defendants' exceptions to the denial of their motions for a nonsuit and the direction of a verdict in their favor.

The intestate, who lived within a quarter of a mile of the crossing, left his home at half past five o'clock on a November morning,

and when last seen alive was driving slowly toward the crossing and was about an eighth of a mile therefrom. The weather was fair, but it was dark and quite foggy near the crossing. He was familiar with the crossing, and was in the habit of walking his horse as he approached it, and looking and listening for a train. The locomotive which killed him carried no headlight and was running unusually fast. No bell was rung nor whistle sounded.

*Fred A. Jones* and *John R. Spring* (*Mr. Spring* orally), for the plaintiff.

*Stephen S. Jewett* and *Alvin Burleigh*, for the defendants.

YOUNG, J. The defendants concede that it can be found they were in fault, but contend that it cannot be found the intestate was free from fault. The test to decide that question is to inquire whether the ordinary man, with the intestate's knowledge of the situation and its dangers, would have driven upon the crossing in the way he did. It is important, therefore, to consider what the intestate knew. He knew that locomotives were equipped with headlights, and that, notwithstanding it was dark and foggy, he could see the light of an approaching locomotive as soon as it came around the curve just east of the whistling-post; that the whistle was usually sounded at that point, and the bell rung until the locomotive reached the crossing; that he could hear the bell and whistle, as well as the rumble of the train, as he drove toward the crossing. It can be found from the evidence of the intestate's custom that he was listening for a train as he approached the crossing and, hearing none, looked for it as he drove along. He knew that when he was quite near the crossing he had an unobstructed view of the track to the whistling-post; and as he heard neither bell nor whistle, notwithstanding he was listening for them, and saw no light up the track, he concluded he could cross in safety in front of the approaching train, drove along, and was killed. It cannot be said that all fair-minded men must agree that the ordinary man, with the intestate's knowledge of the situation and its dangers, would not have done as he did.

*Exceptions overruled.*

PEASLEE, J., did not sit: the others concurred.